## Louisville & Interurban R. R. Company v. Kraft.

(Decided December 19, 1913).

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

FAIRLEIGH, STRAUS & FAIRLEIGH, ALFRED SELLIGMAN and HOWARD B. LEE for appellant.

ALEX SCOTT BULLITT, KEITH L. BULLITT, WM. MARSHALL BULLITT, HELM BRUCE and BRUCE W. BULLITT for appellee.

DISSENTING OPINION BY JUDGE NUNN.

For the Opinion of the Court see 156 Ky., 66.

I am in complete accord with the principles announced in this case to the effect that every private and public interest demand of railroad employes the imperative duty to observe and conform to all reasonable rules and regulations imposed by the company for the protection of life and property, and that any trainman who

violates such rules, of which he has knowledge and has undertaken to perform, takes upon himself the personal consequences of his dereliction. If injury results to him by reason of such violation, and which would not, in any probability, have occurred but for it, he should suffer the consequences of his fault. But in applying these principles due consideration should be given to the question of whether the rule in question is reasonable and just, otherwise there is no room for application of the principles stated in the opinion. If the rule is unreasonable, unjust, conflicting, or of doubtful meaning, and there is an indication that it was arbitrarily made by the railroad company for the mere purpose of relieving it of liability, then employes cannot, and should not, be held to that strict accountability.

The Sinclair case, 30 K. L. R., 1040, cited in the opinion, makes this distinction clear, as will be seen from the following quotation taken from it:

"If a railroad company can make rules that will exonerate it from liability to employes for the gross negligence of the person, or persons, who represent it as vice-principals, without reference to whether the rules are reasonable and just, or not, then there is no reason why it should not enact rules that will afford it immunity in every case where an employe is injured."

The opinion quotes as controlling in this case Rules 209, 210, and 219, but it omits another rule which was introduced in evidence, and is quite as applicable as any of the three quoted. That rule is the train schedule, or time card governing the operation of appellant's cars. I do not mean that employes were obliged to run their cars on schedule time regardless of the rules quoted, but it was their duty so to do unless in conflict with the rules, and which rules were reasonable and just. That is the only phase of the question I care to discuss, and for that purpose attention is directed to the last clause of Rule 210, which is as follows:

"When the view is obscured by *curves,* fog, storms, or other causes, they must be kept under such control that they may be stopped within the range of vision."

This is the only rule which it is even pretended appellee violated. The other rules quoted are peculiarly applicable to those in charge of the car in front. Appellee was in charge of the rear or regular car, and was running on schedule time. The forward car was an extra, and it was the especial duty of those in charge

of it to see that the required interval of time and space be maintained between the two cars, and in event of accident to the front car, it was incumbent upon them to give proper warning to the one following. From the time card those in front knew where the latter car was, or should be, but those behind could have no knowledge of any accident to or stoppage of the front car, except as those in charge of the front car gave it warning, as required by the rules; so it follows that unless appellee violated that clause of Rule 210, quoted above, he was guilty of no negligence, and if guilty of no negligence, this case should not be reversed.

The first inquiry is why was the word "curves" used in that rule? If the rule be read and construed literally, then it is in direct conflict with the time card. The time card provides for the running of these cars on schedule during the hours of every night. Every night the view of the motorman is obscured by darkness. With the headlight reflecting straight in front naturally on a curve the range of vision is very limited, usually less that 50 feet. Considering the numerous curves upon this railroad, in fact, upon every railroad in Kentucky, if a motorman be required to slow down his car upon rounding these curves after dark so that it may be stopped within the range of vision, it is manifestly impossible for him to approximate the schedule time. Instead of making 25 miles an hour, according to the schedule between LaGrange and Louisville, he could not make 10. Had there been no accident, and appellee run his car into Louisville pursuant to such a construction of the rule, can anyone suppose the company would have accepted it from appellee as a sufficient excuse for the delay to his own car as well as to all traffic following him which would necessarily have ensued because of it? The railroad company did not intend that its motorman, or any others, place upon this rule any such construction. Then what does the rule mean?

There are times of unusual weather conditions when these cars must be operated not by the time card, nor by telegraph or telephone orders, but by the natural senses of those in charge of the car. They must rely upon sight and hearing.

In fog conditions the lives of persons crossing the track at public roads would be endangered unless the car be kept under such control as to be quickly stopped. Wind storms break down telephone and telegraph wires,

blow down trees, or cause the track to be otherwise ob-
structed. Rain storms destroy bridges and wash out
fills. All these are causes making the rule imperative,
and also making it the imperative duty of those in charge
of the car to so run that the car may be stopped quickly,
that is, within the range of vision.

The phrase "or other causes" clearly means *other
causes like fog, or storms*; that is, other unusual condi-
tions causing like effects. To my mind the above is the
meaning of the clause quoted, and the only interpreta-
tion which the company intended its employes to give
to it. The word *curves* as used in that connection has
no meaning, unless it be said it was placed there by the
company arbitrarily, and for the purpose of relieving
itself of liability in all cases of rear-end collisions.

The appellee was operating his car in the usual man-
ner, upon schedule time. There was no evidence of fog,
storm, or other like conditions. On the contrary, it was
a clear, still night, and in my opinion there was nothing
in the rules, or elsewhere, warning or compelling ap-
pellee to operate his car in any different manner. He
knew there was a car in front, which should be running
at least five minutes, and not less than 1,000 feet, ahead
of him. That time and distance gave those in charge of
the front car ample opportunity to warn him of trouble
to it, and he had a right to rely upon those in charge of
it performing their duty. Entertaining this view of
the case, I perceive no negligence upon the part of ap-
pellee. Since he was guilty of no negligence, and vio-
lating no rule, it is immaterial, so far as the company
is concerned, whether the court instructed the jury that
he should exercise ordinary care, or the utmost care, or
that it was his imperative duty to follow and comply
with the rules of the company. For these reasons, I
most earnestly dissent from the opinion in this case.